(No. 87-CC-1753-▮▮▮▮▮▮▮▮▮▮▮

DONALD E. WILLIS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 16, 1996.*

JOHN R. LeCOMTE, for Claimant.

JIM RYAN, Attorney General (LINO MENCONI, Assistant Attorney General, of counsel), for Respondent.

## OPINION

EPSTEIN, J.

This personal injury claim arises out of a vehicular accident that occurred January 23, 1985, two miles south of Milledgeville, Illinois on State Route 88, a hilly two-lane road.

The accident occurred when the Claimant skidded his 1975 Volkswagen Rabbit into the rear of a State snowplow which was blocking or partly blocking the roadway while engaged, appropriately enough, in snowplowing operations—"crumbing" a snowbank away from the roadway—but whose State crew, inappropriately, was not utilizing the traffic warning signs or methods mandated by the operations manual of the Department of Transportation ("IDOT"), their employer, as well as by common sense.

The Claimant had been driving south on Route 88 for some time and was aware, or constructively aware, of ongoing snowplowing operations in the area, as he had admittedly passed another slow-moving State snowplow on the same road approximately 15 miles before his forceful encounter (and more than 15 minutes earlier according to his claimed rate of speed). Claimant acknowledges that light-blowing snow was prevalent and that approximately 1/4 inch of accumulated, but dry, snow was on the roadway. He insists, however, that the road was completely dry as he traveled at the legal 50 m.p.h. speed limit.

Claimant first saw the offending snowplow (which was with an endloader that was also blocking part of the road) as he came over a rise 300 feet (i.e. 100 yards or one football field length) before striking it. Claimant braked his Rabbit but was unable to stop on the dry but snowy and hilly road, which he attributes to snow placed in the immediate vicinity of the State vehicles by their plowing efforts. Claimant acknowledged that upon seeing the snowplow (and endloader) in the roadway, he forcefully hit the brakes, rather than pumping them. We take notice that Claimant was driving a vehicle which was built well before ABS brakes were available on automobiles in this country.

Claimant filed his negligence complaint against IDOT in this court in 1987, and the cause was tried before

former Commissioner Turner in August of 1992. The parties ultimately submitted post-trial briefs, which largely frame the issues for our determination.

The sole disputed issues in this case are the negligence of IDOT, the negligence of the Claimant and, if any, their comparative negligence and the allocation of causation and fault for the accident. The Respondent has not disputed the claimed damages.

As this Court has held, claims against the State adjudicated in this Court that arise after our supreme court's decision in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, are governed by the comparative negligence doctrine adopted in that case. (*Peterson v. State of Illinois* (1984), 37 Ill. Ct. Cl. 104, 108-109.) However, for cases arising after the November 25, 1986 effective date of the statutory modification of Illinois' comparative negligence doctrine, codified at section 2—1116 of the Code of Civil Procedure, the modified comparative fault doctrine of the statute applies. As this case arose post-*Alvis* and pre-sec. 2—1116 (since this 1985 accident occurred after June 8, 1981, and before November 25, 1986), it is governed by the pure *Alvis* form of comparative negligence, as the modifying statute is not retroactively applicable.

In this case, it is apparent and hardly disputable that the IDOT snowplow crew was negligent in failing to give due and proper warning of their dangerous presence in the roadway. It is undisputed here that the IDOT crew failed to comport with the warning requirements set forth in the IDOT Worksite Protection Manual, which is a relevant, and here dispositive, standard of protection for the traveling public to meet the State's duty to give adequate warning of dangerous conditions. (See, *Hout v. State* (1966), 25 Ill. Ct. Cl. 301; *Smith v. State* (1990), 42 Ill. Ct. Cl. 19.) Claimant has cited, and we find persuasive, the

recent case of *Wade v. City of Chicago Heights* (1991), 216 Ill. App. 3d 418, 159 Ill. Dec. 228, in which the court approved the submission of a jury instruction containing language from an IDOT regulation relating to warnings to be given to motorists approaching work sites on roadways.

The more difficult issue is assigning a degree of comparative negligence to the Claimant. Despite Claimant's contention that his driving on the day in question was impeccable, we are convinced that he was significantly negligent in his driving and was a substantially contributing cause of the ultimate accident. As the Respondent cogently argues, Claimant's admission that he forcefully hit the brakes rather than pumping them, while cresting a hill at 50 m.p.h. is itself an admission of less than competent driving.

Moreover, given the conditions of (1) a winter day, (2) blowing snow present, (3) accumulated snow on the roadway present, (4) snowdrifts along the way that can, and did, sometimes extend onto the roadway, and (5) snowplowing operations ongoing that day on that road, all of which were observed by, and known to, the Claimant, we are compelled to conclude that driving on that two-lane, undulating road at the 50 m.p.h. speed limit that day was neither prudent nor safe, and was negligent. Snow on a roadway, however dry when left alone, does not remain dry and does reduce traction when traversed by weight-bearing tires, particularly when, as here, they are put into a skid. Snow on a roadway reduces traction and lengthens stopping distance. Claimant is presumed and obliged to know this.

We have reviewed the three negligence factors in evidence that have been shown to have contributed to this accident—the State's lack of warning, the Claimant's excessive speed for the conditions, and his improper braking technique—and are constrained to conclude that

Claimant's negligent driving was a dominant cause of the accident. The Court has concluded that a 60% comparative fault assigned to the Claimant's negligence in this cause is a fair and just measure.

The Claimant has shown actual out-of-pocket damages of $11,448, which consist of $1,000 of property damage to his Rabbit and $10,448 in medical, hospital, ambulance and drug expenses incurred as a result of his injuries. Claimant also demands $30,000 as compensatory damages for his permanent knee and back injuries, and $30,000 for pain and suffering. The Respondent has not contested these demands, and has not substantially disputed Claimant's evidence of permanent damage or pain and suffering. We are not inclined, in this circumstance, to give strict scrutiny of these claim amounts on our own motion. However, noting that we have concluded that Claimant was the predominant cause of this accident we are inclined not to be so expansive on the pain and suffering award as Claimant's three-times-actual-personal damages prayer requests. Accordingly, we conclude that a gross award of $1,000 in property damages, $10,448 in compensatory personal damages, $30,000 for compensation for permanent injury, and $15,000 for pain and suffering, totaling in gross $56,448, is the appropriate measure of damages in gross.

Applying the comparative fault ratio of 60% Claimant fault and 40% State fault that we have determined per the *Alvis* standard, the court will award Claimant $22,579.20.

Accordingly, judgment is entered for Claimant and against the State, and Claimant Donald E. Willis is awarded $22,579.20 as his full and just damages herein.